**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| AAA INTERNET PUBLISHING INC., D/B/A WTFAST<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.,<br><br>Defendants. | Case No. 2:26-cv-00744<br><br>JURY TRIAL DEMANDED |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff AAA Internet Publishing Inc., d/b/a WTFast ("WTFast" or "Plaintiff") files this Complaint against JPMorgan Chase & Co. and JPMorgan Chase Bank, National Association (collectively, "Chase" or "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

## THE PARTIES

2. WTFast is a corporation registered and headquartered in Kelowna, British Columbia, Canada.

3. Upon information and belief, JPMorgan Chase & Co. is a Delaware corporation with its principal place of business at 270 Park Avenue, New York, New York 10017. JPMorgan Chase & Co. may be served through its registered agent, C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

4. Upon information and belief, JPMorgan Chase Bank, National Association is a national banking association and wholly owned subsidiary of JPMorgan Chase & Co. with its principal place of business at 270 Park Avenue, New York, New York 10017. JPMorgan Chase, National Association may also be served through its registered agent, C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Chase is subject to this Court's specific and general jurisdiction pursuant to due to its substantial presence and business in this forum. For example, Chase is subject to the specific personal jurisdiction of this Court because WTFast's claims for patent infringement arise from Chase's acts of infringement in the State of Texas. These acts of infringement include conducting business with customers in Texas at least through its website and/or mobile apps.

8. Venue is proper in this judicial district because Chase offers products and services, conducts business, and has a regular and established place of business in the Eastern District of Texas.

9. For example, Chase maintains an office campus located at 6215 Headquarters Dr., Plano, Texas 75024. In its Plano campus Chase employs more than 12,000 people, according to Chase's LinkedIn posts.




https://www.linkedin.com/posts/jpmorganchase_jpmorganchase-is-proud-to-call-texas-home-activity-7373827570749898752-E3Uu/ (last accessed August 20, 2026).

10. Similarly, the City of Plano identified Chase as the #1 "Leading Employer" in Plano, Texas.

**Plano** Economic Development

## Leading Employers – Plano, TX

| Company | Industry | Description | Employment |
|---|---|---|---|
| JPMorgan Chase | Financial/Insurance | Banking, financial/consolidation services regional office | 11133 |
| Bank of America | Back Office/Call Center/Support | Mortgage lender back office center | 7266 |
| Capital One Finance | Financial/Insurance | Banking, mortgage and credit card services regional operations | 6218 |

https://content.civicplus.com/api/assets/58356543-0b06-4005-b7b4-464e6e000d80 (last accessed August 20, 2026).

11. Employees at Chase's Plano office campus include engineers involved in the development and maintenance of Chase's infringing website, mobile app, and multi-factor authentication system. For example, Chase published job listings for a "Lead Software Engineer- Authentication," a "Principal Software Engineer – Mobile," and a "Software Engineer III - Android Developer" in Plano, Texas.



This job is no longer available

**Lead Software Engineer- Authentication**

JP Morgan Chase & Co. • $120K — $160K *

Plano, TX 75025 In-Person

Information Technology

Less than 5 years of experience

More than 3 months ago

**Full Job Description**

**Job Description**

We have an exciting and rewarding opportunity for you to take your software engineering career to the next level. As a Lead Software Engineer at JPMorgan Chase within the Identity and Access Management, you serve as a seasoned member of an agile team to design and deliver trusted market-leading technology products in a secure, stable, and scalable way. You are responsible for carrying out critical technology solutions across multiple technical areas within various business functions in support of the firm's business objectives.

Show More

* Ladders Estimates

https://www.theladders.com/job/lead-software-engineer-authentication-jpmorganchase-plano-tx_82907537 (last accessed August 20, 2026).




https://www.theladders.com/job/principal-software-engineer-mobile-jpmorganchase-plano-tx_85911296 (last accessed August 20, 2026).




https://www.linkedin.com/jobs/view/software-engineer-iii-android-developer-at-jpmorganchase-4443082717/ (last accessed August 20, 2026).

12. On information and belief, these employees have direct personal knowledge about the Accused System and Chase's infringing activities.

13. Chase also has other business locations in this District. For example, Chase operates a branch at 112 W Austin St, Marshall, TX, 75670.




https://www.chase.com/locator/banking/us/tx/sherman/200-n-travis-st (last accessed August 21, 2026).

14. Chase continues to open new branches across this District and promote such openings in national press releases. For example, the excerpted press release below highlights Chase's Lindale branch, which opened in this District earlier this year.



CONSUMER BANKING

JPMorganChase Plans to Open 18 New Branches Across 11 States in May

*New Chase branches will expand access to affordable banking services and in-person advice*

**NEW YORK**, May 14, 2026 — JPMorganChase plans to open 18 new branches across 11 states in May as part of the firm's continued effort to expand its branch network and bring affordable banking services to more communities.

**Texas**

- Parmer Ranch — 28705 Ronald W Reagan Blvd.
- Lindale — 408 S Main St.

https://media.chase.com/news/jpmc-18-new-branches (last accessed August 20, 2026).

Chase branch with ATM

Lindale

Closed until 9:00 AM Friday | ATM open 24 hours

About Services ATM Info




408 S Main St, Lindale, TX, 75771

+1 (430) 235-6603

https://www.chase.com/locator/banking/us/tx/lindale/408-s-main-st (last accessed August 20, 2026).

15. Upon information and belief, Chase's business specifically depends on employees being physically present at places in this District, and Chase has affirmatively acted to make permanent operations within this District.

## FACTUAL ALLEGATIONS

### The Asserted Patent

16. The allegations set forth in the foregoing paragraphs 1-15 are hereby realleged and incorporated herein by reference.

17. WTFast is the owner of U.S. Patent No. RE47,533 (the "'533 Patent"), titled "Method and System of Securing Accounts." The application for the '533 Patent was filed on May 24, 2017. The '533 Patent, which issued on July 23, 2019, is a reissue of U.S. Patent No. 9,087,183, which issued on July 21, 2015. The '533 Patent was assigned to WTFast, which has full ownership

of all rights in the ’533 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. Claim 13 is an example of the claims of the ’533 Patent being asserted. A true and correct copy of the ’533 Patent is attached as Exhibit A.

18. Claim 13 of the ’533 Patent reads as follows:

A non-transitory computer-readable medium that stores instructions executable by one or more processors to perform a method, the method comprising:

providing an account, wherein the account is associated with a user;

providing a security protocol;

communicating with a database;

storing at least one profile identifier and a geographic location associated with the account on the database;

detecting an attempt to access the account by a computer;

determining at least one profile identifier associated with the computer and a geographic location associated with the computer;

comparing the at least one profile identifier associated with the account to the at least one profile identifier associated with the computer;

comparing the geographic location associated with the account to the geographic location associated with the computer;

permitting the computer access to the account when 1) the at least one profile identifier associated with the account is the same as the at least one profile identifier associated with the computer and 2) the geographic location associated with the account is the same as the geographic location associated with the computer;

communicating with the user to determine if access to the account should be permitted when the at least one profile identifier associated with the account is different from the at least one profile identifier associated with the computer;

reporting the at least one profile identifier associated with the computer and the geographic location associated with the computer to an administrator of the at least one profile identifier when 1) the at least one profile identifier associated with the account is different from the at least one profile identifier associated with the computer and 2) the geographic location associated with the account is different from the geographic location associated with the computer;

wherein said at least one profile identifier associated with said account is selected from the group consisting of: a Computer Processing Unit (CPU) serial number, a CPU

model number; a motherboard serial number, a motherboard model number, a hard drive serial number, a hard drive model number, an admin Service Set Identifier (SSID) provided by the operating system, an admin Universally Unique Identifier (UUID) provided by the operating system, a manufacturer assigned computer system serial number, a manufacturer assigned computer system model number, a Compact Disk Read Only Memory (CD-ROM) serial number, a CD-ROM model number, a Digital Versatile Disk Read Only Memory (DVD-ROM) serial number, a DVD-ROM model number, an internal mass media storage device serial number, an internal mass media storage device model number, a Basic Input Output System (BIOS) serial number, a BIOS model number, a Media Access Control (MAC) address, a monitor serial number, a monitor model number, a Random Access Memory (RAM) serial number, a RAM model number, a universally unique identifier (UUID) associated with the client computer, a universally unique identifier (UUID) associated with a vendor of the client computer, a globally unique identifier (GUID) associated with the client computer, a globally unique identifier (GUID) associated with a vendor of the client computer, a BIOS manufacturer, a BIOS release date, vendor and device Identifiers (IDs) of all installed Peripheral Component Interconnect (PCI) devices on the client computer;

wherein said at least one profile identifier associated with said client computer is selected from the group consisting of: a CPU serial number, a CPU model number; a motherboard serial number, a motherboard model number, a hard drive serial number, a hard drive model number, an admin SSID provided by the operating system, an admin UUID provided by the operating system, a manufacturer assigned computer system serial number, a manufacturer assigned computer system model number, a CD-ROM serial number, a CD-ROM model number, a DVD-ROM serial number, a DVD-ROM model number, an internal mass media storage device serial number, an internal mass media storage device model number, a BIOS serial number, a BIOS model number, a MAC address, a monitor serial number, a monitor model number, a Identifiers RAM serial number, a RAM model number, a universally unique identifier (UUID) associated with the client computer, a universally unique identifier (UUID) associated with a vendor of the client computer, a globally unique identifier (GUID) associated with the client computer, a globally unique identifier (GUID) associated with a vendor of the client computer, a BIOS manufacturer, a BIOS release date, vendor and device IDs of all installed Peripheral Component Interconnect PCI devices on the client computer.

19. The ’533 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

20. The ’533 Patent is a marked improvement over existing systems to secure online transactions. For example, the ’533 Patent describes failures in the prior art to solve the issue of

authenticating a user and a device. ’533 Patent at 2:35-3:26. The patent summarizes that “[i]t is an object of the present invention to obviate or mitigate the above disadvantages [in the prior art].” *Id.* at 3:27-28. The claims provide a specific solution for securing existing authentication systems and online transactions. *See, e.g.*, *id.* at 3:33-62; Claim 13. Further, the claimed inventions can be implemented without the need for additional software on client computer devices operated by end users, thereby providing enhanced security capability that may be easily implemented and is highly secure. Among other advancements to prior art systems, the claimed technology utilizes not only unique profile identifiers of a computer attempting to access the account but also other identifying details from outside the local area network. These express improvements over the prior are captured by the claims. Accordingly, the ’533 Patent does not merely claim a result or the mere idea of an enhanced security system but instead claims a specific mechanism to achieve that enhanced security.

21. Then existing authentication methods and systems in the prior art included a variety of weaknesses. For example, one option required storing cookies, which is not permitted by all account users and often unwanted by end users. *Id.* at 2:30-34. Other options required software that must be installed on every device from which a user accesses their account, *id.* at 2:61-3:11, or requires customers to have registered their various devices with their account prior to completing a transaction, *id.* at 2:43-50. The ’533 Patent seeks to avoid those drawbacks that exist in the prior art.

22. The ’533 Patent also claims specific tangible components, including a “database,” a “computer,” and specific identities associated with both the account and the computer that accomplish the accused functionality. *See, e.g., id.* at Claim 13. The claimed invention improves and expands the functionality and utility of traditional security systems.

23. These improvements to existing security systems benefit diverse audiences, including banks, credit card companies, and any entity that seeks to keep its user’s information secure.

24. WTFast's website identifies the '533 Patent as part of its patented technologies. WTFast has substantially complied with any obligation it may have under 35 U.S.C. § 287.

**Background**

25. The allegations set forth in the foregoing paragraphs 1-24 are hereby realleged and incorporated herein by reference.

26. WTFast is a technology company headquartered in Kelowna, Canada. It was co-founded in 2009 by Rob Bartlett, who is the named inventor of the Asserted Patents.

27. WTFast's mission is "To Connect Anyone, Anywhere – Faster!" WTFast has been delivering network optimization to PC gamers since its inception and now provides optimization to mobile, routers, and customer premises equipment technologies in the cloud.




https://business.wtfast.com/about (last accessed August 20, 2026).

28. With a focus on network lag, WTFast discovered that internet infrastructure treats all data the same for the purposes of routing and delivery. WTFast's experience with gaming networks and other content delivery networks uniquely placed it to understand routing issues within traditional network architecture. WTFast's experience in this area also led to advancements in multi-factor authentication, cloud infrastructure visualization, use of multiple data streams, and DDoS and hacking protection. WTFast was able to obtain 11 patents related to these technologies.

These 11 patents are listed on WTFast's website. *See* https://www.wtfast.com/en/ (last accessed August 11, 2026).

29. Certain WTFast technologies have been used by major companies like ASUS, TP-Link, Cox Communications, and Singtel. And the WTFast team has experience running networks for Disney, Rackforce, and others.

## THE ACCUSED SYSTEM

30. The allegations set forth in the foregoing paragraphs 1-29 are hereby realleged and incorporated herein by reference.

31. In the banking industry, security is paramount. Like many others in that industry, Chase has employed means to protect its customers' account data. One way that Chase does this is by providing a website and mobile application ("Chase Online Platforms") for users to access their accounts online. Chase Online Platforms include a suite of security features that can help protect its users' information and money. For example, Chase provides a system that implements various security protocols to allow users to access their accounts and detect if suspicious activity occurs when attempting to access those accounts (the "Accused System").

32. Chase's website describes various mechanisms that the Accused System utilizes to ensure that the correct individual is accessing a specific account. For example, in addition to a typical username and password, the Accused System includes additional safeguards against suspicious activity and additional validation checks to recognize the user and device attempting access.

**Safeguards against suspicious activity**

If we spot suspicious activity on your account, we may place a temporary hold on it. This is an extra security step to help ensure it's really you and not someone else using your account.

**Additional validation checks**

When you sign in for the first time or we see unusual login or account activity we'll use additional validation checks like mobile app notifications or one time code to authenticate you. This helps us protect your accounts and lets us recognize your device the next time you sign in.

**Add an additional verification step for extra security at sign-in**

**When signing in to chase.com:** Sign up for 2-step verification. You will receive a one-time code via email or phone to confirm your identity when signing in.
**When signing into the Chase Mobile® app:** You can choose to use your phone's unlock code as an extra layer of security at sign-in.

Turn on now >

https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last visited August 20, 2026).

33. Additionally, Chase provides instructions on how users can set up other security protocols, such as 2-step verification.

How do I set up 2-step verification to get extra security when I sign in to chase.com?

Sign up for 2-step verification and get extra security when you sign in to chase.com. You'll be asked to verify it's you by entering a one-time code.

1. Log into your Chase Mobile® app and tap on "Profile & Settings" in the top right corner
2. Tap on "Settings"
3. Tap on "Security & Privacy"
4. Scroll down to "Ways you can be more secure"
5. Tap on "Use 2-Step verification for extra security at sign in"
6. You can toggle the switch to use 2-step Verification

How do I enable an additional security check when I sign in to the Chase Mobile® app?

Sign up for a second verification step by adding your phone or tablet's passcode or screen lock (PIN, pattern or password) to login to the Chase Mobile® app. To use this feature, you must have biometrics enabled. Follow these steps to set-up:

1. Log into your Chase Mobile® app and tap on "Profile & Settings" in the top right corner
2. Tap on "Settings"
3. Tap on "Sign-in preferences"
4. Scroll down to "Face ID & Passcode"
5. Toggle on "Turn on Face ID" if not enabled yet
6. Check the box: "Add your device passcode with Face ID"

You can enable or disable this feature at anytime.

https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last visited August 20, 2026).

34. Chase makes, has made, uses, offers to sell, sells, exports, and/or imports the Accused System.

35. A non-limiting example of the Accused System is when a user attempts to log into their account through one of the Chase Online Platforms. The user will enter their username and password or use Passkey to access their account:




https://www.chase.com/ (last accessed August 20, 2026).



## A passkey provides a faster, more secure way to sign in than using a password

### What is a passkey?

A passkey lets you sign into a website quickly and safely using your fingerprint, face, or a PIN — no password is required.

### How does it work?

A passkey works like a lock and key — the website saves a special lock, and your device or password manager keeps the only key that fits. When put together, they confirm your identity without a password, and your private key remains securely stored on your device or password manager. You are able to continue using a password if your device or password manager is not available.

### Why is it so secure?

A passkey lets you sign in using a unique key stored on your device and unlocked by your biometrics or device PIN. A passkey can't be guessed or reused like a password. Passkeys also are phishing-resistant, since you don't type anything in that could be stolen by a fake website or malware.

Set up your passkey

https://www.chase.com/digital/resources/privacy-security/security/cybersecurity (last accessed August 20, 2026).



### Use a passkey to sign in to chase.com

Passkeys make signing in safer and easier. Instead of typing a password, you use your face, fingerprint or device passcode to unlock a unique digital 'key'. This is a special code stored on your device or password manager that proves it's really you. There's no password for scammers to guess or steal.

https://www.chase.com/digital/resources/privacy-security/security/how-you-can-protect (last accessed August 20, 2026).

36. As part of the process to open an account or when registering for access through Chase Online Platforms, the Accused System stores at least one profile identifier and a geographic location associated with the user's account in a database. For example, the Accused System captures and stores information associated with the user's device along with a geographic location

associated with the user account. For example, as shown in the various excepts from Chase's website, the Accused System collects and stores information regarding a user's device(s) as well as address information of the user to associate with the user's account. Such device information includes IP address, other unique identifying numbers for the device, operating system information and browser information.

**Identity and Device Verification**

You authorize your wireless carrier to use and/or disclose information about you and your wireless device to JPMC directly or through a service provider, which we may use for the duration of your relationship with us, to help identify you or your wireless device and to help protect against fraud or unauthorized use of our services under this Agreement. Those details may include, among others, name, billing address, email, phone number, and device information.

https://static.chasecdn.com/content/dam/legal-agreements/library/en/dsa1_la/versions/dsa1_la.pdf (last accessed August 20, 2026).

## Information we collect

### Personal Information

When you visit or use our online services, we may collect personal information from or about you including your name, email address, mailing address, telephone number(s), account numbers, limited location information, user name and password. We may also collect payment card information, tax identification numbers, driver's license numbers (or comparable) when you provide such information while using our online services and where we believe it is reasonably required for ordinary business purposes.

### Usage and Other Information

In addition to the personal information described above, we may collect certain information about your use of our online services. For example, we may capture the IP address of the device you use to connect to the online service, the type of operating system and browser you use, and information about the site you came from, the parts of our online service you access, and the site you visit next. We or our third-party partners may also use cookies, web beacons or other technologies to collect and store other information about your visit to, or use of, our online services. In addition, we may later associate the usage and other information we collect online with personal information about you.

### Chase Mobile

For your convenience, Chase offers you the ability to access some of our products and services through mobile applications and mobile-optimized websites ("Chase Mobile"). When you interact with us through Chase Mobile, we may collect information such as unique device identifiers for your mobile device, your screen resolution and other device settings, information about your location, and analytical information about how you use your mobile device. We may ask your permission before collecting certain information (such as precise geo-location information) through Chase Mobile.

https://www.chase.com/digital/resources/privacy-security/privacy/online-privacy-policy (last accessed August 20, 2026).

## A passkey provides a faster, more secure way to sign in than using a password

### What is a passkey?

A passkey lets you sign into a website quickly and safely using your fingerprint, face, or a PIN — no password is required.

### How does it work?

A passkey works like a lock and key — the website saves a special lock, and your device or password manager keeps the only key that fits. When put together, they confirm your identity without a password, and your private key remains securely stored on your device or password manager. You are able to continue using a password if your device or password manager is not available.

### Why is it so secure?

A passkey lets you sign in using a unique key stored on your device and unlocked by your biometrics or device PIN. A passkey can't be guessed or reused like a password. Passkeys also are phishing-resistant, since you don't type anything in that could be stolen by a fake website or malware.

Set up your passkey

https://www.chase.com/digital/resources/privacy-security/security/cybersecurity (last accessed August 20, 2026).

# Add an extra layer of security by enrolling a trusted mobile device

2 min



At Chase, we're continuously enhancing our security to help protect you. Enrolling a trusted device is one way we can better recognize you. It adds an extra layer of protection against unauthorized access—even if someone has some of your information.

Review the FAQs below to learn more.

## Frequently Asked Questions

**1. What is a trusted device?**

A trusted device is a smartphone that you've verified with the Chase Mobile® app in accordance with requirements established by Chase. Once verified, we may ask you to use this device for certain banking activities to help protect your account.

https://www.chase.com/personal/banking/education/basics/trusteddevice (last accessed August 20, 2026).

37. During an attempt to access an account online, the Accused System collects information from the device attempting to access the account in addition to the username and

password and compares this information with information previously stored and associated with the account. For example, the Accused System can recognize devices, and when it detects a login attempt from an unrecognized device, the system uses additional checks, such as multi-factor authentication, to verify whether access should be provided.

**Multi-factor authentication**

Multi-factor authentication requires users to verify a login attempt using a secondary device. When a login attempt from an unrecognized device is detected, an authentication code is sent to the user via phone, text or email. The login is approved if the user can verify it with the correct code.

https://www.chase.com/personal/banking/education/basics/online-banking (last accessed August 20, 2026).

38. The Accused System will also conduct alternative or additional validation checks if the device information of the device attempting to access the system does not match with device information associated with the account. For example, the Accused System may require the user to provide additional information, such as a code, to secure the transaction.

**Additional validation checks**

When you sign in for the first time or we see unusual login or account activity we'll use additional validation checks like mobile app notifications or one time code to authenticate you. This helps us protect your accounts and lets us recognize your device the next time you sign in.

https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last accessed August 20, 2026).

39. The Accused System also compares the geographic location associated with the account to the geographic location associated with the device attempting to access the account. For example, the Accused System captures IP address information from the device attempting to access the account and determines geographic location based on the IP address. It then compares the geographic location derived from the IP address to the address information associated with the account. For mobile devices attempting to access the account, the Accused System may also capture additional location information from the mobile device's GPS or cellular information to compare with information associated with the user's account.

## Information we collect

### Personal Information

When you visit or use our online services, we may collect personal information from or about you including your name, email address, mailing address, telephone number(s), account numbers, limited location information, user name and password. We may also collect payment card information, tax identification numbers, driver's license numbers (or comparable) when you provide such information while using our online services and where we believe it is reasonably required for ordinary business purposes.

### Usage and Other Information

In addition to the personal information described above, we may collect certain information about your use of our online services. For example, we may capture the IP address of the device you use to connect to the online service, the type of operating system and browser you use, and information about the site you came from, the parts of our online service you access, and the site you visit next. We or our third-party partners may also use cookies, web beacons or other technologies to collect and store other information about your visit to, or use of, our online services. In addition, we may later associate the usage and other information we collect online with personal information about you.

### Chase Mobile

For your convenience, Chase offers you the ability to access some of our products and services through mobile applications and mobile-optimized websites ("Chase Mobile"). When you interact with us through Chase Mobile, we may collect information such as unique device identifiers for your mobile device, your screen resolution and other device settings, information about your location, and analytical information about how you use your mobile device. We may ask your permission before collecting certain information (such as precise geo-location information) through Chase Mobile.

### Additional Sources of Information

We may also collect information about you from additional online and offline sources including from co-branded partner sites or commercially available third-party sources, such as credit reporting agencies. We may combine this information with the personal and other information we have collected about you under this Online Privacy Policy.

## Use of Information

We use the information discussed above in the following ways:

- Processing applications and transactions;
- Verifying your identity (such as when you access your account information);
- Preventing fraud and enhancing the security of your account or our online services;
- Responding to your requests and communicating with you;
- Managing your preferences;
- Performing analytics concerning your use of our online services, including your responses to our emails and the pages and advertisements you view;
- Providing you tailored content and marketing messages; operating, evaluating and improving our business (including developing new products and services; improving existing products and services; performing data analytics; and performing accounting, auditing and other internal functions);
- Complying with and enforcing applicable legal requirements, relevant industry standards, contractual obligations and our policies; and
- For any other purposes that we may specifically disclose at the time you provide or we collect your information.

We may also use data that we collect on an aggregate or anonymous basis (such that it does not identify any individual customers) for various business purposes, where permissible under applicable laws and regulations.

https://www.chase.com/digital/resources/privacy-security/privacy/online-privacy-policy (last accessed August 20, 2026).

40. When the information collected from the device attempting access of the account matches the information associated with the account, the Accused System allows access. When the location of the device appears suspicious or unusual, the Accused System requires additional verification.

41. For example, for an unrecognized device determined when the identifier associated with the device attempting access is different from the identifier associated with the account, the Accused System communicates with the user to determine if access should be allowed. Such communication may be in the form of a notice that the device is unrecognized, and the Accused System may send a code or call the user with information to ensure access is authorized or require another form of multi-factor authentication. The Accused System triggers a similar type of extra

security when it determines that the geographic information obtained from the device attempting access differs from geographic information associated with the user's account.

42. On information and belief, when the identifier associated with the computer is different from the identifier associated with the account or the geographic location associated with the account is different from the geographic location associated with the computer, the Accused System reports this information to an administrator. For example, the Accused System maintains a log of suspicious activity or otherwise alerts administrators that may take precautionary measures.




https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last accessed August 20, 2026).

43. When the identifier associated with the account is the same as the identifier associated with the device and the geographical location of the account is the same as the geographical location associated with the device, the Accused System permits access to the account.

44. Chase controls access to the Chase Online Platform through, among other things, management of the user's login credentials. Chase configures, operates, manages, and controls the Accused System, including the software functionality necessary for operation of the Accused System. Chase benefits from its use and control of the Accused System.

45. Chase prescribes the manner and timing by which users interact with the Accused System and thereby directs and controls operation of the user-facing components.

46. Through operation of the Accused System, Chase obtains commercial, operational, and/or financial benefits, including allowing its customers to securely access their account information online, tracking who accesses customers' accounts, and preventing fraud.

47. Chase puts the Accused System into service by making the system available, initiating its operation, controlling its functionality, and causing the claimed components to interact to perform their intended purpose.

48. The Accused System infringes one or more of Claims 1-19 of the '533 Patent.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. RE47,533 E

49. The allegations set forth in the foregoing paragraphs 1-48 are hereby realleged and incorporated herein by reference.

50. In violation of 35 U.S.C. § 271(a), Chase has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, at least claim 13 of the '533 Patent by making, having made, using (including for testing purposes), offering to sell, selling, exporting, and/or importing the Accused System in the United States, including within this District. Similarly, Chase infringes the '533 Patent by executing the software for securing customer accounts that performs the steps required by the claim.

51. For example, Chase has directly infringed and continues to directly infringe Claim 13 of the ’533 Patent by making, using, selling, offering to sell or importing software capable of performing and/or performing each element of Claim 13.

52. In violation of 35 U.S.C. § 271(b), and following service of this Complaint, Defendant induces its customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, the ’533 Patent by providing the Accused System along with instructions via its website(s), product manuals, user manuals, product support, or through other documents that induce its customers and/or end users to directly infringe the ’533 Patent and by using the Accused System in the United States, including within this Judicial District. *See, e.g.,* https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you; https://www.chase.com/personal/banking/education/basics/trusteddevice; https://www.chase.com/digital/resources/privacy-security/security/how-you-can-protect.

53. Chase has knowledge of the ’533 Patent and its infringement since at least the date of service of this Complaint. Any infringement by Chase after acquiring this knowledge constitutes willful infringement.

54. As a result of Chase’s infringing conduct, WTFast has suffered damages. Chase is liable to WTFast in an amount that adequately compensates it for Chase’s infringement and no less than a reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## JURY DEMAND

55. Pursuant to Fed. R. Civ. P. 38, WTFast demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

56. WTFast respectfully requests that this Court enter judgment for WTFast and against Chase as follows:

A. An adjudication that Chase has infringed one or more claims of the ’533 Patent;

B. A finding that Chase’s infringement has been willful;

C. An award of damages to be paid by Chase adequate to compensate WTFast for Chase’s infringement of the ’533 Patent, including interest, costs, and expenses;

D. An enhancement of damages due to Chase’s willful infringement under 35 U.S.C. § 284;

E. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of WTFast’s reasonable attorneys’ fees; and

F. An award to WTFast of such further relief at law or in equity as the Court deems just and proper.

Dated: August 25, 2026

Respectfully submitted,

*/s/ Vishal Patel*
Vishal Patel
Texas Bar No. 24065885
vpatel@coleschotz.com
Lead Counsel
Brian L. King
Texas Bar No. 24055776
bking@coleschotz.com
Arjun Nair
Texas Bar No. 24120122
anair@coleschotz.com
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Jeffrey M. Saltman
D.C. Bar No. 979812
jsaltman@coleschotz.com
Alexa D. Reed
Texas Bar No. 24151093
areed@coleschotz.com
COLE SCHOTZ P.C.
1875 K Street, NW
Suite 475
Washington, DC 20036
Tel: (202) 221-7500
Fax: (202) 478-0945

**ATTORNEYS FOR PLAINTIFF AAA INTERNET PUBLISHING INC. D/B/A WTFAST**